1  CRAIG B. McKINNEY
   P.O. Box. 605
2  Fallon, Nevada 89407
   In Proper Person
3  (775) 427-8246

```
┌──────────────────────────────────────────┐
│  ☐ FILED        ✓ RECEIVED                 │
│  ☐ ENTERED          SERVED ON              │
│           COUNSEL/PARTIES OF RECORD        │
│        ┌──────────────────────┐            │
│        │    JUL 2 7 2016       │            │
│        └──────────────────────┘            │
│       CLERK US DISTRICT COURT              │
│        DISTRICT OF NEVADA                  │
│                            DEPUTY          │
└──────────────────────────────────────────┘
```

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

CRAIG BRUCE McKINNEY                    CASE No. ___
                                              3:16-cv-00448 ___

                    PLAINTIFF,

VS.

RICK MARTINEZ, individually and as an          **CIVIL RICO**
officer of FIRE EXTINGUISHER SERVICE           **COMPLAINT**
CENTER, LLC,, SHANNON HILL MARTINEZ,           **Title 18 U.S.C.**
individually and as an officer of FIRE EXTINGUISHER   **1961 et.seq.**
SERVICE CENTER, LLC, PENNIE LUMEN,
FIRE EXTINGUISHER SERVICE CENTER, INC.,
LAURENCE D. CLAWSON, individually and as an
officer of FIRE EXTINGUISHER SERVICE CENTER, INC.,
JACK MACKAY, ROGER WOLFE, OFFICERS AND
AGENTS OF WALKER LAKE ENTERPRISES, INC.,
DOE INDIVIDUALS I-XX, and
EACH AND ALL IN ANY CORPORATE CAPACITY,
OR ANY ITERATION THEREOF;
ROE CORPORATIONS I-XX INCLUSIVE.

                    DEFENDANTS,
_____/

## COMPLAINT PURSUANT TO RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT AND OTHER CAUSES OF ACTION

Plaintiff sues the Defendants, as individuals conducting or operating a criminal

enterprise, for fraudulently violating Plaintiff's due process and other rights, vested property

rights and other constitutional rights, committing extortion and blackmail, theft, perjury and

suborning perjury, witness intimidation, jury tampering, obstructing justice and fraudulently

misappropriating property and funds. Defendants' conduct in this matter directly caused

Plaintiff's injuries and as a result of the criminal acts and actions of the individuals who

comprise said criminal enterprise. The Defendants have systematically and continuously, and in

-1-

1   a pattern of racketeering activity, over the past ten (10) years and more, conducted a corrupt

2   enterprise in violation of the Racketeer Influenced and Corrupt Organization ("RICO") Act, all of

3   which acts are continuing in nature.  As grounds therefore, Plaintiff alleges as follows:

## I. JURISDICTION AND VENUE

5   1.        This is a civil action for violations of 18 U.S.C. § 1961 et seq. ("Racketeer Influenced

6   and Corrupt Organizations Act" or "RICO".   RICO addresses the corrupt abuse and

7   misuse – usually covertly – of organizations, entities, individual persons. businesses, institutions

8   or even governments or government agencies, such that superficially legitimate entities actually

9   operate for criminal purposes irrelevant to the entity's purpose.

10  2.        This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

11  Jurisdiction is also proper pursuant to 18 U.S.C. § 1965, which allows for nationwide

12  jurisdiction pursuant to the Racketeer Influenced and Corrupt Organizations Act  ("RICO"), 18

13  U.S.C. §§ 1961-1968

14  3.        This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

15  The Plaintiff's injuries, including the deprivation of his legal rights and legally protected

16  vested property rights, are proximately related to the illegal conduct of Defendants, each

17  and every one of them, jointly and severally

## II. FACTS COMMON TO ALL COUNTS

19  4.        Defendants have misappropriated – that is, stolen – property of the plaintiff and engaged

20  in acts and actions to conceal their illegal activities.

21  5.        In 1998 Plaintiff, Craig McKINNEY, hereinafter known as McKinney, became employed

22  by Defendants Rick MARTINEZ and Shannon MARTINEZ, husband and wife and the owners

23  of a woman and minority owned business, FIRE EXTINGUISHER SERVICE CENTER, LLC,

24  hereinafter known as FESC, LLC, as a low salaried technician  in the field of servicing portable

25  fire extinguishers.

26  6.        In August, 2000, Defendants, Rick  MARTINEZ hereinafter, known as R. MARTINEZ

27  and Shannon Hill MARTINEZ, hereinafter known as S. MARTINEZ  and their employee, now

28  Plaintiff McKinney, entered into an oral agreement wherein McKinney would take over the

1   payments of $324.24, hereinafter known as "TOP" (contract) of FESC, LLC's 1997 Dodge 4X4

2   Truck and as an incentive to "TOP", McKinney, would start receiving 30% commissions as of

3   and to include the project known as AT Transport Systems, hereinafter known as "AT " located

4   in Lovelock, Nevada.  "AT " was a very large, complex and extremely profitable design, build

5   and install industrial project.  The "AT" project commenced the installation phase in September,

6   2000 and was completed in October, 2000 mainly by McKinney with little help from others.

7   McKinney was by that time licensed and certified by the TYCO / PYROCHEM Corporation to

8   design, build, install and certify industrial fire suppression equipment and pre engineered systems

9   valued at approximately $40,000.00.

10  7.     **THAT** Defendants R MARTINEZ and Penny LUMEN, herein after known as LUMEN,

11  and while the company secretary / bookkeeper and a willing participant, did on October 15, 2000

12  gain McKinney's signature under false pretenses to two (2) written contracts . R MARTINEZ had

13  no intentions of honoring any agreement oral or written constituting felony predicate acts of

14  racketeering activity.

15  8.     **THAT** on October 15, 2000 the first contract signed was for McKinney to " TOP" and

16  make timely payments of $324.24 of the Dodge truck valued at approximately $26,000.00 while

17  he was still in reliance to the oral agreement with R MARTINEZ wherein McKinney would be

18  receiving 30% commissions beginning with the "AT " project. Obtaining McKinney's signature

19  under false pretenses is a felony predicate act of racketeering activity.

20  9.     **THAT** on or about October 15, 2000 R MARTINEZ altered, and changed the written

21  contract to a lesser 25% amount for commission. Defendant, R MARTINEZ,  explained that he

22  and McKinney "have a side bar and to just sign the damn thing." McKinney, while still informed

23  and believing he would be receiving his 30% commission from the completed AT project and

24  after signing the written commission agreement, was then informed by Defendant R MARTINEZ

25  that his commissions starts after the AT job. Obtaining McKinney's signature under false

26  pretenses constitutes Grand Larceny and Embezzlement of the commission funds and are felony

27  predicate acts of racketeering activity.

28  10.    **THAT** on October 15, 2000 R MARTINEZ wilfully, fraudulently and with malice

-3-

1  aforethought failed, denied and refused to compensate McKinney for the substantial money

2  commissions due him from the A T project constituting grand larceny of funds and grand theft of

3  property and are felony predicate acts of racketeering activity.

4  11.  **THAT** on October 15, 2000 and after R MARTINEZ falsely and fraudulently induced and

5  instructed McKinney to sign the commissions contract and then withheld and denied any and all

6  commission funds to McKinney for the A T project constituting a felony predicate acts whereby

7  obtaining McKinney's signature to a contract under false pretenses, taking property from another

8  under circumstances not amounting to robbery and Grand Larceny/Grand Theft demonstrating

9  felony predicate acts of racketeering activity.

10  12.  **THAT** Defendants, R MARTINEZ and LUMEN, a willing participant, conspired to add

11  to the signed contract an "effective date" as being October 15, 2000 below McKinney's signature

12  without his knowledge.  Such conspiracy of false inducement and altering of a written document

13  after signature stands as felony intent to conspire and intent for concealment of fraud and

14  embezzlement upon McKinney of his money thus constituting felony predicate acts of

15  racketeering activity.

16  13.  **THAT** during the approximate period of November, 2000 and the early months of 2001 R

17  MARTINEZ did willfully, wrongfully and with malice aforethought instruct and suborn the office

18  secretary / bookkeeper, Defendant LUMEN, a willing participant at that time, to alter McKinney's

19  payroll log sheets so as to falsely and fraudulently show that he had received 20% to 25%

20  commissions rather than the actual and true 30% he had been receiving since the AT Project.

21  That such willful and fraudulent alterations and doctoring of payroll records were designed and

22  conspired to help bolster and authenticate the fraudulent written commission agreement signed

23  earlier by McKinney in case there were to be court action at a later date.  Said alterations,

24  doctoring and falsification of McKinney's financial records was conspiratorial by the

25  MARTINEZs and suborned by LUMEN, a willing participant, constituting conspiracy to prepare

26  and offer false evidence in any court or legal authority and stands as felony predicate acts of

27  racketeering activity.

28  14.  **THAT** on or about September 24, 2002, R MARTINEZ and S MARTINEZ did

-4-

1  willfully, wrongfully, knowingly and  fraudulently, under color of law and with malice

2  aforethought "reposes" from McKinney said Dodge truck constituting felony breech of contract

3  thereby obtaining McKinney's signature to a contract under false pretenses, taking property from

4  another under circumstances not amounting to robbery and Grand Larceny/Grand Theft and stand

5  as predicate acts of racketeering activity.

6  15.     **THAT** in November/December, 2003 McKinney filed a Letter of Complaint to the

7  Churchill County District Attorney's Office therein listing  the RICO  violations committed by

8  that time by the MARTINEZS' including but not limited to unemployment fraud.  District

9  Attorney, Art Mallory, then knowingly and wrongfully forwarded McKinney's letter to the State

10  Attorney General's Office erroneously and falsely claiming it was out of his jurisdiction and when

11  McKINNEY requested of MALLORY to recall the RICO letter for his office to investigate,

12  McKINNEY was then personally subjected to additional unwarranted insults, obloquy and disdain

13  from MALLORY.

14  **16.     THAT** a civil complaint was filed by the plaintiff but not served in Churchill County,

15  Third Judicial District Court on May 7, 2003.  A First Amended Complaint was filed on June 26,

16  2003 adding Breach of Contract / Fraud /Unjust Enrichment /Fraud and a Second Amended

17  Complaint was  filed and served on or about November 29, 2004 adding Wrongful Termination,

18  Libel, Slander and Defamation of Character.  A four (4) day Jury Trial was held and completed on

19  or about May 12, 2006 without any award to McKINNEY and followed  by a JNOV granted in

20  Plaintiff's, McKinney's favor then by an additional  hearing on Juror Misconduct with

21  Defendant's, MARTINEZSs', culpability and  involvement being established.  A Notice of

22  Appeal to the Nevada State Supreme Court was filed by Defendants, MARTINEZ, on March 27,

23  2007.  The Clerk's Certificate of Order of Reversal and Remand, Case # 49172 was filed in the

24  Third Judicial District Court on March 25, 2010.  This case has yet to see retrial and there are no

25  bars, latches or statutes of limitations that apply at the State or Federal levels in that RICO's

26  statute of limitations is subject to the equitable principles of tolling due to fraudulent

27  concealment, continuing torts, conspiracy and pendency of court action.  A Third Amended

28  Complaint in the Third Judicial District Court would note and show again the continual "pattern

1  of racketeering" by predicate acts continuing  by each and all of the Defendants. to sign the

2  commission and TOP agreements.

3  17.    **THAT** on or about May 12, 2006 those same said false payroll documents of McKinney's

4  were introduced and offered as evidence by defendants, MARTINEZ, in Third Judicial District

5  Court, State of Nevada during jury trial, case # 29406 while knowing that those records were

6  false.  Willfully offering known fraudulent false evidence in a court of law is a felony predicate

7  act of racketeering activity.

8  18.    **THAT** Defendant LUMEN, at one point in 2001, temporarily, became an unwilling

9  participant in conspiring to continue the "doctoring", falsifying and  altering of McKinney's

10 payroll records when, while in her defiance, did state to R MARTINEZ, " I'm not going to do

11 that to him any more and I'm not going to jail for you, Rick " and then stormed out of the office

12 and did not return for about a week.   McKinney was  falsely informed by S  MARTINEZ that

13 LUMEN had been fired for throwing a temper tantrum in the office.

14 19.    **THAT** at some point in time prior to Defendant, LUMEN, permanently leaving her

15 employment with FESC,  LLC in 2001, and while again after being suborned by  R MARTINEZ,

16 and now  again as a willing participant did knowingly, wrongfully and fraudulently prepare a false

17 1099  Federal Tax Document to be issued to McKinney in the amount of $3,822.00 for the work

18 year 2001.  Such willful and false preparation and issuance of Federal Tax documents for and to

19 the IRS constitutes felony Grand Larceny, felony conspiracy to commit fraud and felony offering

20 of false evidence and stands as fraudulent felony predicate acts of racketeering activity.

21 20.    **THAT** on or about September 20, 2002 McKinney filed a timely grievance to the Nevada

22 State Labor Commissioner's Office concerning his unpaid commission from the AT Project.

23 21.    **THAT** on or about September 24, 2002 R  and  S MARTINEZ  fraudulently, falsely

24 wrongfully, knowingly, and  with  malice aforethought terminated McKinney's employment from

25 FESC, LLC citing contrived, false and  erroneous accusations to include but not limited to

26 embezzlement.  Said wrongful termination of employment was in retaliation of McKinney's

27 timely and lawfully filed grievance with the Nevada Labor Commissioner and stands as felony

28 conspiratorial predicate acts of racketeering activity.

22.    **THAT** on or about September 24, 2002 R and S MARTINEZ, fraudulently, falsely wrongfully, knowingly, under color of law and with malice aforethought "repossessed" said Dodge truck citing false, contrived and erroneous accusations of late payments and non payment of repairs.  MARTINEZs' had no intentions of ever honoring the "T O P" Contract oral or written  constituting felony Grand Theft and Grand Larceny and stands as felony predicate acts of racketeering activity

23.    **THAT** on or about September 24,  2002 and prior to repossessing the Dodge and terminating McKinney's employment the MARTINEZs', while with the assistance of Churchill County Sheriff's Deputies, invaded McKinney's privacy whereby entering his unlocked private living quarters without McKinney's knowledge or permission and willfully, wrongfully and fraudulently, under color of law, with malice aforethought and with the color of authority standing by did steal not only working files consistent with McKinney's employment but also all copies and files of McKinney's private and personal payroll records relating to his commissions and job costs over the past two years that were solely the private property of McKinney constituting invasion of privacy and theft of private property also constituting predicate acts of racketeering activity.

24.    **THAT** on or about November, December 2002 through January, February, March 2003 Defendants, R and S  MARTINEZ, falsely, fraudulently, under color of law and with malice aforethought  filed  vicious and knowingly false reports to the Sheriff's Department alleging harassing phone calls, embezzlement, theft and harassing employees.  Thereafter both Defendants, MARTINEZ,  continually approached and unsuccessfully attempted to influence and move  then Deputy District Attorney Will Mattly, to issue a warrant under color of authority for McKinney's arrest for theft and  embezzlement, to issue a search warrant of McKinney's  personal storage locker while he was to be incarcerated.  Obtaining or seeking a person's arrest under false pretenses and offering false evidence  constitutes perjury and stand as felony predicate acts of racketeering activity

25.    **THAT** in 2002 McKinney filed for his unemployment benefits with the State of Nevada for his employment with FESC. LLC.  During the process MARTINEZs' appealed any and all

1  award to McKinney by willfully, wrongfully, fraudulently, under color of law and with malice

2  aforethought cited "embezzlement", "willful misconduct" and **"endangering peoples lives"**.

3  While at the oral appeal hearing for final determination FESC, LLC'S  attorney and now co-

4  defendant Ernie ADLER, herein after known as ADLER  and  S  MARTINEZ, willfully,

5  knowingly, falsely, fraudulently,  under color of law and with malice aforethought supplied

6  ludicrous false documentation to the Oral Board and stating  that McKinney, while having

7  installation files with him, "jeopardized peoples lives". McKinney's  unemployment benefits

8  were then denied.  Willfully submitting false evidence and committing perjury to a Board or

9  Tribunal constitutes fraudulent  felony predicate acts of racketeering activity.

10  26.    **THAT** in September, 2002 both Defendants, MARTINEZs', did willfully, wrongfully,

11  falsely, fraudulently,  under color of law and with malice aforethought published and disseminated

12  said  intentional false accusations of embezzlement and " Sheriff's Report" to the Office of the

13  Labor Commissioner and to the Department of Employment in successful attempts to again

14  malign and discredit McKinney in obtaining his unemployment benefits and assistance from the

15  Labor Commissioner's Office.  Said wrongful dissemination constitutes willfully submitting false

16  evidence and committing perjury to a lawful Board or Tribunal and stand as felony predicate acts

17  of racketeering activity.

18  27.    **THAT** Defendants, R and S  MARTINEZ again in 2003, did willfully, wrongfully,

19  fraudulently, under color of law and with malice aforethought prepared  another fraudulent and

20  false Federal 10-99 in the amount of $4,000.00 for McKinney's  2002 employment with FESC.

21  LLC. constituting fraud, perjury and offering false evidence and documents to the federal tax

22  board and stand  as felony predicate acts of racketeering activity.

23  28.    **THAT** in April, 2003  McKinney went to the Fallon, Nevada,  H & R Block Tax Office to

24  have his returns done for 1999, 2000, 2001 and 2002 all by FESC, LLC employment.  Defendant,

25  LUMEN, by that point in time and since leaving FESC  LLC, in 2001, was employed at the

26  Fallon, H & R Block Office and did calculate those  returns for McKinney.  It wasn't  discovered

27  until May, 2006 and after a first trial in District Court in Fallon,  Nevada, case no. 29406, that

28  while LUMEN had been preparing McKinney's tax returns in 2003 she did, while in her rushed

1   and criminal confusion, believed she was destroying and cleansing herself after the fact of the

2   false and fraudulent 1099 that she herself had  willingly and fraudulently prepared for R

3   MARTINEZ in 2001. Said acts constitute compounded constructive federal felony fraud and

4   felony predicate acts of racketeering activity.

5   29.      **THAT** defendant, LUMEN, did wilfully, wrongfully, fraudulently and with malice

6   aforethought destroy the 2002 10-99 that had been prepared and issued by the MARTINEZ' for

7   2002 in the approximate amount of $4,000.00.  Said destruction and continued conspiracy as a

8   willing participant to falsify McKinney's Federal Income Tax records and immediately thereafter

9   file said tax records electronically to the IRS.  This constitutes constructive federal felony fraud

10  and felony predicate acts of racketeering activity.

11  30.      **THAT** the MARTINEZ' continued their fraudulent and deceptive conduct with a series of

12  willful and malicious false police reports against McKinney consisting of harassing phone calls

13  and fax all in effort to secure an unwarranted restraining order that led later to an unwarranted

14  MUTUAL extended felony restraining order and to another false and malicious Police Report

15  thereby obtaining a  Felony Arrest Warrant on  McKinney.  Completely unknown to him and one

16  year later McKinney was arrested on that Felony Warrant and wrongfully jailed for (22) twenty

17  two hours before he could  notify his attorney and thereby immediately released.  Falsely

18  obtaining the arrest and incarceration of a person is a fraudulent felony predicate act of

19  racketeering activity.

20  31.      **THAT** during discovery and a series of legal motions and affidavits by the MARTINEZ'

21  in responses as Defendants and represented then by James Francis SLOAN,  hereinafter known as

22  SLOAN  in the Third (now Tenth) District Court, Fallon, Nevada, Case no. 29406 originally filed

23  on May 7, 2003,  Amended June 26, 2003 and Second Amended on November 29, 2004 by

24  McKinney, as the Plaintiff, the MARTINEZ' had  filed numerous and deliberately false and

25  fraudulent  affidavits,  prepared and knowingly submitted  false documents, and refused to supply

26  numerous documents requested by Plaintiff,  again stating deliberately  false, fictitious and

27  malicious reasons not to furnish the requested documentation.  Refusal and failure to produce the

28  documentation legally requested by the plaintiff constitutes abuse of process, fraudulent

1  concealment of evidence and fraud on the Court.  Said acts constitute fraudulent felony predicate

2  acts of  racketeering activity.

3  32.    **THAT** a (4) four day Jury Trial was conducted in early May of 2006 in the Third District

4  Court, case no. 29406 wherein the MARTINEZ' were represented by SLOAN and whereby no

5  award of any kind was awarded to the Plaintiff, McKinney, by the Jury.   Due to the abundance of

6  cash receipts held by McKinney for all the payments on the Dodge but completely  ignored by  the

7  jury and never contested by the MARTINEZS, a JNOV (Judgment Notwithstanding the Verdict)

8  was then Ordered for McKinney by Senior District Court  Judge Manoukian of approximately

9  $17,500.00 for the money paid on the truck, but again nothing for the fraud, breach of contract,

10 unjust enrichment, attorney's fees or any of the other causes of action.

11 33.    **THAT** on or about October 11, 2006 it was  inadvertently discovered from a MARTINEZ'

12 rental tenant, (Vern Hassenkamp) who  had casually commented to Mr. Crowley that his landlord,

13 R. MARTINEZ, had mentioned to him (Hassenkamp) that he had just "kicked Crowley's ass in

14 Court".  When the tenant asked, "How"?  MARTINEZ proudly responded  "I had influence on the

15 jury."

16 34.    **THAT** on October 11, 2006  it was  discovered that on May 8, 2006 during the Jury Voir

17 Dire,  prospective juror and now Defendant,  John MACKAY, hereinafter known as MACKAY,

18 then and still a willing participant and Defendants R and S  MARTINEZ  willingly, intentionally,

19 fraudulently, under color of law and with malice aforethought deliberately withheld, failed and

20 declined to acknowledge or divulge  truthful information to the Court, as they were required and

21 swore an oath to, that they had all been business associates for years and as recently as

22 approximately (5) five days prior to trial and that their businesses were located next door to each

23 other. This intentional surreptitious and fraudulent silence and non disclosure violated

24 McKinney's Constitutional Rights under the Fifth and Fourteenth Amendments.  Said willful

25 failure to be honest and forthcoming stands as fraud on the Court and **perjury by silence**  are

26 felony predicate acts of racketeering activity.

27 35.    **THAT** on May 8, 2006 during the Jury Voir Dire both Defendants R and S  MARTINEZ

28 and then prospective juror, MACKAY,  while remaining silent and non responsive to the

1  directions, instructions and requests by Mr. Crowley and the Court to be forthcoming and honest

2  about ever knowing the parties involved including the business, FESC, LLC were in effect

3  stating:

4        1. "No, I do not know the defendants".

5        2. "No, I have not done business with them"

6        3. "No, We do not know the prospective Juror"

7        4. "No, We have not done business with him"

8        5. "No, our businesses are not located next door to each other."

9  Their willful and deliberate silence translates to willful and deliberate fraudulent felony perjury

10 and felony fraud on the Court by all three defendants herein, R MARTINEZ, S MARTINEZ and

11 MACKAY.   The Defendants unscrupulous and audacious conduct violated McKinney's

12 Constitutional Rights to a fair and impartial trial guaranteed to him by the Fifth and Fourteenth

13 Amendments. Their **perjuries by silence** translates into felony predicate acts of racketeering

14 activity.

15 36.      **THAT** it was also discovered that on or about May 12, 2006 and one day following the

16 jury trial R MARTINEZ sent one of his employees, Bill Denoyer, next door to present a gratuity

17 of a new portable fire extinguisher for the bar owned by MACKAY.   When asked by an

18 employee at the bar, Ms. Christine Castleman, what it was for, Mr. Denoyer answered, "for

19 winning the trial". This violates McKinney's Constitutional Rights under the Fifth and

20 Fourteenth Amendments and establishes the fact that the MARTINEZs' knew MACKAY and

21 visa-versa, that their intentional fraudulent silence during Voir Dire and their statements during

22 the hearing for Juror Misconduct was and is perjury and compounding felony predicate acts of

23 racketeering activity.

24 37.      **THAT** on December 15, 2006 during the hearing on Juror Misconduct it was discovered

25 that defendant MACKAY, a willing participant, had moved himself immediately into the position

26 of Jury Foreman and was strongly adamant during the short deliberation that "McKinney gets

27 nothing". Said act of aiding and abetting the conspiracy to deprive McKinney of his property,

28 monies, Fifth and Fourteenth Amendment Rights of the U.S. Constitution was and is fraudulent

1  compounding felony predicate acts of racketeering activity.

2  38.    **THAT** on December 15, 2006 during the hearing on Juror Misconduct MACKAY, again

3  under oath, wilfully, falsely, fraudulently, under color of law and with malice aforethought stated

4  "I didn't want to be on some civil matter". " If I could have gotten off some how, I would have".

5  Said self serving statements from the all defendants were described by Trial Judge Manoukian as

6  "highly suspect" and stand as felony perjury and contributory to conspiracy as willing participants

7  to violating McKinney's Constitutional Rights under the Fifth and Fourteenth Amendments was

8  and is compounded felony predicate acts of racketeering activity.

9  39.    **THAT** on November 29, 2007 MARTINEZs' and their new attorneys and now named

10 defendants, The Story Law Group, Lori Story and Robert Story hereinafter known as the STORYS

11 and now willing participants, fraudulently, under color of law and with malice aforethought filed

12 a false, frivolous and merit less civil suit against McKinney for Defamation, Libel and Slander in

13 the Third District Court, State of Nevada, Case # 33542 and at the same time filed an improper

14 Motion for Preliminary Injunction (GAG Order) before McKinney was able to answer the

15 complaint and file a Counter Complaint on the basis of " THE TRUTH ". The Story's have in

16 effect by way of filing a false, frivolous and malicious complaint on behalf of R MARTINEZ and

17 the abuse of process allowed to by Judge Huff participated in preventing and denying McKinney

18 of his rights guaranteed to him by the First Amendment of the United States Constitution wherein

19 his rights to Freedom of Speech has been violated.   Everything McKinney wrote or stated then

20 complained of by MARTINEZ was and is well grounded and documented by "the truth" much of

21 which was unanimously found as fact by (3) three Justices of the Nevada State Supreme Court,

22 Case # 49172.  Obtaining said "GAG Order" stands as abuse of process and compounded

23 predicate acts of racketeering activity.

24 40.    **THAT** the filing of their frivolous and erroneous Defamation Suit is well over eight years

25 ago, thereby demonstrating that there was never any intent of MARTINEZ and STORYs' to see

26 the matter adjudged but rather fraudulently and under color of law and the color of authority with

27 malice aforethought and by abuse of process did obtain an erroneous "GAG Order" against

28 McKinney thereby preventing the truth about MARTINEZs' from being known.  Said "GAG

1  Order" is a violation of McKinney's  First Amendment Rights of Free Speech and Due Process

2  Rights of Fifth and Fourteenth Amendments  guaranteed to him by the Constitution of the United

3  States and stands as compounding predicate acts of racketeering activity.

4  41.    **THAT** by way of a JNOV ORDER  filed in District Court case # 29406 by the Trial

5  Judge Manoukian, McKinney was awarded approximately $17,000.00 shown by receipts for the

6  monies he had contractually paid into the truck. MARTINEZs. filed for Appeal to the Nevada

7  State Supreme Court on March 27, 2007 and McKinney filed a Cross Appeal April 12, 2007. The

8  matter was fully briefed and oral arguments were held then followed by a unanimous Reversal and

9  Remand in McKinney's favor for a new trial on February 26, 2010 by the Nevada State Supreme

10 Court, Case # 49172.

11 42.    **THAT prior to the Jury Trial in May, 2006 and prior to the Appeal** of that trial in the

12 Nevada State Supreme Court the MARTINEZ' liquidated approximately $300,000.00 of cash

13 equities from their properties at River's Edge Drive and Reno Hwy both located in Fallon, Nevada

14 in  fraudulent concealment of their cash while anticipating the probable adverse judgements

15 against them. Said illegal liquidations and concealment of assets as a defendant in civil actions

16 stand  as  fraud   and   felony acts of racketeering activity.

17 43.    **THAT** on or about September 12, 2008, S  MARTINEZ filed a Homestead Declaration on

18 one recently purchased  property on Strawberry Lane in Washoe County singularly in her own

19 name while still married to R MARTINEZ. It is shown that this property was purchased with

20 funds previously liquidated from the River's Edge and the Reno Hwy. properties in Fallon,

21 Churchill County and with commingled funds belonging to and  stolen from McKinney  Said

22 Homestead Declaration was filed in fraudulent concealment of assets from the inevitable

23 judgements for McKinney and stand as compounded felony predicate acts of racketeering activity.

24 44.    **THAT** on or about April 13, 2010, R  MARTINEZ filed a Homestead Declaration on one

25 recently purchased  property on Front St. in Churchill County singularly in his own name while

26 still married to R MARTINEZ. It is shown that this property was purchased with funds

27 previously liquidated from River's Edge and Reno Hwy. in Fallon and with commingled funds

28 belonging to and stolen from McKinney.  Said Homestead Declaration was filed in fraudulent

-13-

1  concealment of assets from the inevitable judgements for McKinney and stand as compounded
2  felony predicate acts of racketeering activity.

3  45.    **THAT** on November 13, 2009 Defendants RICK and SHANNON MARTINEZ, and Larry
4  CLAWSON, hereinafter known as CLAWSON, formed and filed Defendant Fire Extinguisher
5  Service Center, INC., hereinafter known as FESC, INC. Said  new corporation is concealing
6  fraudulently transferred  assets and stand as compounded felony predicate acts of racketeering.

7  46.    **THAT** on  November 25, 2009 Defendants, MARTINEZs', prior to the Reversal and
8  Remand from the Nevada Supreme Court, negotiated through their attorneys, The Story Group,
9  the release of a  $6,493.00  Supersedeas Bond ordered by Judge Manoukin to be placed in the
10 District Court by the defendants and the additional $11,235.00 cash from the awarded JNOV to
11 McKinney and his attorney in exchange for the release of a Judgment Lien McKinney  had on the
12 MARTINEZ's   Rivers Edge property in Fallon, Nevada.

13        That property was in eminent foreclosure and a "short sale" was only possible if
14 McKINNEY were to  dismiss his lien on the property.   MARTINEZ' filed the agreed upon
15 "acknowledgment"  with the Churchill County Recorder and had their short sale of the Rivers
16 Edge property. The $6,493.00 bond and additional $11,235.00 then belonged solely to
17 McKinney, leaving the "TOP" and truck payments  issue and point as moot.

18 47.    The MARTINEZ' again  never intended to honor that agreement and thereby thru fraud
19 and malice aforethought gained McKinney's and/or his attorney's signature under false pretenses
20 for release of a legal lien again establishing compounded felony predicate acts of  racketeering
21 activity.

22 48.    **THAT** Defendants MARTINEZ' and their counsel without notice to McKINNEY or his
23 attorney did immediately thereafter by intentional fraud, abuse of process, fraud upon the Court
24 with  malice aforethought fraudulently and surreptitiously  moved the Court to release the BOND
25 and funds belonging to McKINNEY unto themselves and their attorney while using now
26 defendant, WALKER LAKE ENT's bank account to cash and disburse those ill-gotten funds
27 among themselves establishing another breech of contract and compounded  fraud and felony
28 predicate acts of  racketeering activity.

-14-

49.   **THAT** on December 15, 2009 Defendants, MARTINEZs', filed a "SHAM" Petition for and received a Dissolution of Marriage in Churchill County while having already liquidated all substantial cash equities from their numerous properties. Said "SHAM" divorce was in attempt to harbor their cash and other equities through the ability to file two Homestead Declarations. **THAT** on **April 13, 2010**, R. MARTINEZ filed a Homestead Declaration for the property on W. Front St., Fallon, Nevada on or about **April 7, 2010** just (42) forty-two calendar days after learning and knowing that there will be another trial. Said "SHAM" divorce and Homesteads stand as compounded predicate acts of racketeering activities.

## THE RICO ENTERPRISE

50.   For any Racketeer Influenced and Corrupt Organization case, it is important to distinguish between legitimate organizations, businesses, and even government offices and the abuse of those entities for illegal purposes by the unofficial, corrupt "enterprise."

51.   This pattern of illegal activities committed by the Defendants, the "Predicate Acts," discussed below, were done with the purpose of financial gain and were done within the past ten (10) years and continuing.

52.   By the acts alleged herein, Defendants, each and every one of them, jointly and severally, have aided and abetted and conspired to violate # and other laws, through their ongoing criminal enterprise as set forth below.

53.   The law presumes generally that a person intends the obvious results of their actions.

54.   Defendants could be charged and convicted of multiple, related violations of law which form a pattern and which violations are each potentially punishable by more than one year in jail constituting spoliation of evidence to avoid a subpoena.

55.   Sometimes called "anticipatory obstruction of justice," 18 U.S.C. § 1519 states that:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or

any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

### Predicate Criminal Violations of Federal Mail Fraud Statute, 18 U.S.C. § 1341

56.     The Defendants could be charged and convicted of multiple, related violations of law which form a pattern and practice and ongoing criminal enterprise and which violations are each potentially punishable by more than one year in jail constituting mail fraud.

57.     Defendants acted in criminal violation of the federal mail fraud statute under 18 U.S.C. § 1341. 18 U.S.C. § 1341 provides:

> a. Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared  major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 20 years, or both.

58.     Defendants devised or intended to devise a scheme or artifice meant to defraud and/or for obtain money or property from illicit and illegal activities.

59.     Defendants utilized false or fraudulent pretenses, representations, and/or promises in order to defraud and/or obtain money from illicit and illegal activities.

60.     In order to achieve or attempt to achieve the fraud described in the preceding paragraphs, Defendants sent correspondence and other documents that were sent or

-16-

1    delivered by the Postal Service and by wire.

2    61.    Violation of 18 U.S.C. § 1341 is felony punishable by 30 years of imprisonment

3           and a fine of $1,000,000 USD.

4    **Predicate Criminal Violations of Federal Wire Fraud Statute, 18 U.S.C. § 1343**

5    62.    The Defendants could be charged and convicted of multiple, related violations of

6           law which form a pattern and practice and which violations are each potentially

7           punishable by more than one year in jail constituting wire fraud.

8    63.    Defendants further acted in criminal violation of the federal wire fraud statute
            under 18 U.S.C. 1343. 18 U.S.C. § 1343 provides:
9           a. Whoever, having devised or intending to devise any scheme or
            artifice to defraud, or for obtaining money or property by means of
10          false or fraudulent pretenses, representations, or promises, transmits
            or causes to be transmitted by means of wire, radio, or television
11          communication in interstate or foreign commerce, any writings, signs,
            signals, pictures, or sounds for the purpose of executing such scheme
12          or artifice, shall be fined under this title or imprisoned not more than
            20 years, or both. If the violation occurs in relation to, or involving any
13          benefit authorized, transported, transmitted, transferred, disbursed, or
            paid in connection with, a presidentially declared major disaster or
14          emergency (as those terms are defined in section 102 of the Robert T.
            Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)),
15          or affects a financial institution, such person shall be fined not more than
            $1,000,000 or imprisoned not more than 30 years, or both.

16

17   64.    Defendants devised or intended to devise a scheme or artifice meant to defraud

18   and/or to obtain money or property from illicit payments and illegal activities.

19   Defendants utilized false or fraudulent pretenses, representations, and/or promises

20   in order to defraud and/or obtain money from illicit payments and illegal activities.

21   65.    Defendants transmitted or caused to be transmitted by means of wire, radio, or

22   television communication in interstate or foreign commerce, writings, signs, signals,

23   pictures, or sounds for the purpose of executing such scheme or artifice when they

24   transmitted telephone and cellular telephone calls, documents, facsimiles, emails, instant

25   messages, and any other form of communication

26   66.    Violation of 18 U.S.C. § 1343 is a felony punishable by 20 years of imprisonment

27   and a fine of $1 Million USD.

28

-17-

**Predicate Criminal Acts of False Statements**

67.     The Defendants could be charged and convicted of multiple, related violations of law which form a pattern and practice and which violations are each potentially punishable by more than one year in jail constituting false statements to officials of the U.S. Government in violation of 18 U.S.C. § 1001. This statute provides:

> (a) except as otherwise provided in this section, whoever, in any manner within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully – (1) falsifies, conceals, or covers up by any trick scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both

68.     Knowingly submitting false and fabricated tax documents constitutes false statements to officials of the U.S. Government in violation of 18 U.S.C. § 1001.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Conversion/ Misappropriation of private of the Plaintiff
### (Common law crime)

69.     Plaintiff repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

70.     Defendants, through their concerted efforts, converted, appropriated and stole the private property of plaintiff in the form of cash and property.

### SECOND CAUSE OF ACTION
### Acquisition and Maintenance of an Interest in and Control of
### an Enterprise Engaged in a Pattern of Racketeering Activity:
### 18 U.S.C. §§ 1961(5), 1962(b)

71.     During the years preceding August 1, 2016, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. § 1962(b) (prohibited activities).

72.     Non-sovereign Defendants are each "persons" within the meaning of the

-18-

1  Racketeer Influenced and Corrupt Organizations Act.

2  73.    Defendants operate as an "enterprise" within the meaning of RICO, the activities

3  of which effect interstate and foreign commerce.

4  74.    By virtue of the predicate acts described in this Complaint, including without

5  limitations: laundering of monetary instruments, engaging in monetary transactions

6  improperly derived from unlawful activity, Defendants transferred, received, furthered

7  and supplied financing and income that was derived, both directly and indirectly, from a

8  pattern of racketeering activity in which each of them participated as a principal and used

9  and invested, both directly and indirectly, such income and the proceeds of such income,

10  in establishing, operating and furthering terrorist and other illegal enterprises in violation

11  of 18 U.S.C. § 1962(a).

12  75.    As a direct and proximate result of Defendants' violation of 18 U.S.C. § 1962(a),

13  Plaintiff suffered the loss of valuable property, financial services and support, and

14  suffered other business and pecuniary damages.

15  76.    Plaintiffs further allege that all Defendants did commit two (2) or more of the

16  offenses itemized above in a manner which they calculated and premeditated intentionally to

17  threaten continuity, i.e. a continuing threat of their respective racketeering

18  activities, also in violation of the RICO law at 18 U.S.C. § 1962(b) supra.

19  77.    18 U.S.C. § 1964(c) defines "racketeering activity" as follows:

20          (1) "racketeering activity" means
            (A) any act or threat involving murder, kidnaping, gambling,
21          arson, robbery, bribery, extortion, dealing in obscene matter, or
            dealing in a controlled substance or listed chemical (as defined in
22          section 102 of the Controlled Substances Act), which is chargeable
            under State law and punishable by imprisonment for more than one
23          year;
            (B) any act which is indictable under any of the following
24          provisions of title 18, United States Code: Section 201 (relating to
            bribery), section 224 (relating to sports bribery), sections 471, 472,
25          and 473 (relating to counterfeiting), section 659 (relating to theft
            from interstate shipment) if the act indictable under section 659 is
26          felonious, section 664 (relating to embezzlement from pension and
            welfare funds), sections 891–894 (relating to extortionate credit
27          transactions), section 1028 (relating to fraud and related activity in
            connection with identification documents), section 1029 (relating
28          to fraud and related activity in connection with access devices),

-19-

section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1351 (relating to fraud in foreign labor contracting), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581–1592 (relating to peonage, slavery, and trafficking in persons)., [1] section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phone or records, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), sections 175–178 (relating to biological weapons), sections 229–229F (relating to chemical weapons), section 831 (relating to nuclear materials).
(C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501 (c) (relating to embezzlement from union funds),
(D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving,

-20-

concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States,
(E) any act which is indictable under the Currency and Foreign Transactions Reporting Act,
(F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or
(G) any act that is indictable under any provision listed in section 2332b (g)(5)(B);

78.    Plaintiff demands that judgment be entered against Defendants, each and every one of them, jointly and severally, including an award of trebled damages as consistent with 18 U.S.C. § 1964 (c), compensatory and actual damages, reasonable attorneys' fees, pre-judgment interest, post-interest, costs, and an award that this Court deems just and proper.

### THIRD CAUSE OF ACTION
### Conduct and Participation in a RICO Enterprise through a Pattern of Racketeering Activity: 18 U.S.C. §§ 1961(5), 1962(c)

79.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein, and specifically repeat and re-allege the allegations under the Second Cause of Action concerning RICO liability.

#. All Defendants did associate with a RICO enterprise of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

80.    Likewise, all Defendants did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO enterprise through a pattern of racketeering activity, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c).

81.    During the ten (10) calendar years preceding August 1, 2016, all Defendants did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B),

1  and did so in violation of the RICO law at 18 U.S.C. § 1962 (c) (prohibited activities).

2  82.    Plaintiff further alleges that all Defendants did commit two (2) or more of the

3  offenses itemized above in a manner which they calculated and premeditated

4  intentionally to threaten continuity, i.e. a continuing threat of their respective racketeering

5  activities, also in violation of the RICO law at 18 U.S.C. § 1962(c) supra

6  83.    Plaintiff demands that judgment be entered against Defendants, each and every

7  one of them, jointly and severally, including an award of trebled damages as consistent

8  with 18 U.S.C. § 1964 C, compensatory and actual damages, reasonable attorneys' fees,

9  pre-judgment interest, post-interest, costs, and an award that this Court deems just and

10 proper.

## FOURTH CAUSE OF ACTION
### Conspiracy to Engage in a Pattern of Racketeering Activity:
### 18 U.S.C. §§ 1961(5), 1962(d)

84.    Plaintiff repeats and re-alleges each and every allegation of the foregoing

paragraphs as if fully set forth herein, and specifically repeats and re-alleges the allegations

under the Second Cause of Action concerning RICO liability.

85.    All Defendants did conspire to acquire and maintain an interest in a RICO

enterprise engaged in a pattern of racketeering activity, in violation of 18 U.S.C. §§

1962(b) and (d).

86.    During the ten (10) calendar years preceding August 1, 2016, all Defendants did

cooperate jointly and severally in the commission of two (2) or more of the predicate acts

that are itemized at 18 U.S.C. §§ 1961(1)(A) and (B), in violation of 18 U.S.C. § 1962(d).

87.    Plaintiffs further alleges that all Defendants did commit two (2) or more of the

offenses itemized above in a manner which they calculated and premeditated intentionally to

threaten continuity, i.e. a continuing threat of their respective racketeering activities, also in

violation of 18 U.S.C. § 1962(d) (prohibited activities).

88.    Plaintiff demands that judgment be entered against Defendants, each and every

one of them, jointly and severally, including an award of trebled damages as consistent

1  with 18 U.S.C. § 1964(c), compensatory and actual damages, reasonable attorneys' fees,

2  pre-judgment interest, post-interest, costs, and an award that this Court deems just and

3  proper.

### PRAYER FOR RELIEF

5  WHEREFORE, Plaintiff prays for judgment against Defendants, each and every one of

6  them, for the following:

7  I.     Plaintiff prays for in excess of $5 Million USD in compensatory damages and in

8  excess of $50 Million USD in punitive damages, not including the trebled damages for the RICO

9  causes of action, against Defendants, each and every one of them jointly and severally;

10 II.    Attorney's fees and other litigation costs reasonably incurred in this action under any

11 relevant statutory authority or case holding;

12 III.   Attorney's fees and other litigation costs reasonably incurred in this action

13 pursuant to the Racketeer Influenced and Corrupt Organizations Act; and,

14 IV.    Any other relief the Court deems just or proper.

### JURY DEMAND

16 **Plaintiff respectfully demands a jury trial on all issues so triable.**

17 Dated: _July 27, 2016_

18 Respectfully submitted, _____

-23-

**<u>VERIFICATION</u>**

STATE OF NEVADA          )
                         ) ss.
COUNTY OF CHURCHILL  )

CRAIG McKINNEY, being first duly sworn, upon oath deposes and says:

That he is the Plaintiff in the above-entitled matter; that he has read the within and foregoing Complaint and knows the contents thereof; that the same is true to his knowledge, except for those matters therein stated on information and belief, and as to those matters, he believes them to be true.

DATED this 27 day of _____, 2016

_____
CRAIG McKINNEY

-24-